COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-07-009-CV

 

 

LARRY WATSON,                                                              APPELLANTS

SHERIDAN K. WATSON, 

WELDON KENNEDY, 

AND
THENA KENNEDY                                                                          

 

                                                      V.

 

BOBBY J. TIPTON                                                                   APPELLEE

 

                                                  ------------

 

            FROM COUNTY
COURT AT LAW NO. 2 OF PARKER COUNTY

 

                                                  ------------

 

                                                OPINION

 

                                                  ------------

Weldon and Thena Kennedy, their daughter Sheridan
Watson, and her husband Larry (collectively AAppellants@) appeal
from the trial court=s grant of summary judgment for
Appellee Bobby J. Tipton.  Because we
hold that the trial court did not err by granting summary judgment, we affirm
the trial court=s judgment.








I.  Facts and Procedural History

Weldon owns J.W. Kennedy, Inc. (AJWK@) in
Weatherford, Texas.  He and his wife
Thena live at 606 Hilltop Drive in Weatherford. 
Weldon=s daughter Sheridan and her
husband Larry live at 107 Oriole Street in Weatherford. 

On June 13, 2005, Tipton filed two declaratory
judgment actionsCone against the Kennedys, and
the other against the Watsons.  In each
suit, Tipton asked the trial court to construe the validity of a warranty deed
and to declare that Tipton held good and marketable title to the property
described by the deed.

In his suit against the Kennedys, Tipton alleged
that on September 25, 2001, for consideration, the Kennedys executed a warranty
deed (Athe
Kennedy deed@) conveying to Tipton the
property at 606 Hilltop.  He alleged that
the Kennedys retained possession of the property under an agreement that they
would pay all taxes and insurance on the property and that the Kennedys
violated that agreement.  He further
alleged that in a subsequent forcible detainer action, the Kennedys raised an
issue of title by challenging the validity of the deed.








Tipton made similar claims in his suit against the
Watsons.  He alleged that on September
24, 2001, the Watsons conveyed to him by warranty deed (Athe
Watson deed@) property at Lot Fifteen, Block
Three in the Rolling Hills Addition of Weatherford, a property known to him to
have a municipal address of 1318 Clear Lake Road, Weatherford, Texas.  He claimed that the Watsons retained
possession of the property under an agreement that they would pay all taxes and
insurance on it, that the Watsons violated that agreement, and that in a
subsequent forcible detainer action he brought, the Watsons raised an issue of
title by challenging the validity of the deed.

The declaratory judgment actions were
consolidated, and both the Kennedys and the Watsons filed answers that included
verified denials that they executed the documents forming the basis of the
lawsuit,  verified denials of the
genuineness of their endorsements on those documents, and the affirmative
defense of release.  They subsequently
filed amended answers adding the affirmative defenses of laches and lack of
consideration.








After counsel for the Watsons and the Kennedys
withdrew, Tipton filed his first amended motion for traditional and no-evidence
summary judgment on his declaratory judgment action against the Watsons.  In his no-evidence motion, Tipton alleged
that the Watsons had no evidence to support their contentions that they did not
execute the deed, that the endorsements on the deed were not genuine, or that
Tipton=s suit
was barred by the doctrine of release. 
He argued that because the deed was recorded in the public records, the
presumption that the deed is valid applies and that an acknowledgment on a deed
is conclusive evidence of the facts stated in the instrument.  He restated these assertions in his
traditional motion for summary judgment, and to this motion, he attached a copy
of the Watson deed showing that it had been recorded in October 2001.

On the same day, Tipton filed his first amended
motion for traditional and no-evidence summary judgment on his declaratory
judgment action against the Kennedys, raising the same arguments with respect
to the Kennedy deed as he raised regarding the Watson deed.  He attached to the motion a copy of the
Kennedy deed showing that it had been recorded in January 2003.

The Kennedys and the Watsons, acting pro se,
filed an amended answer alleging that Tipton=s
attorney Alex Tandy, either alone or in complicity with Tipton, fraudulently
obtained the signatures of the Watsons and Weldon and fraudulently appended
them to the deeds at issue.  The answer
also listed twenty-two affirmative defenses in accordance with rule 94 of the
Texas Rules of Civil Procedure.[1]








On the same date, the Watsons and the Kennedys
filed a joint response to the summary judgment motions.  To their response, they attached a number of
documents that they claimed raised a fact issue.  Appellants filed a third amended answer on
the day of the summary judgment hearing, which included a counterclaim for
fraud and for failing to give constitutional and Federal Truth in Lending
notices and disclosures relating to their homestead property.

The trial court granted summary judgment for
Tipton.  The court=s order
states that the Kennedy and Watson deeds passed good and marketable title to
Tipton and also awards Tipton attorneys=
fees.  The order further states that it
is a final order Aand disposes of all claims and
causes of action herein.@ 
The Kennedys and the Watsons appealed.

II.  Standard of Review








A plaintiff is entitled to summary judgment on a
cause of action if it conclusively proves all essential elements of the claim.[2]  When reviewing a summary judgment, we
take as true all evidence favorable to the nonmovant, and we indulge every
reasonable inference and resolve any doubts in the nonmovant=s favor.[3]  The summary judgment will be affirmed only if
the record establishes that the movant has conclusively proved all essential
elements of the movant=s cause of action or defense as
a matter of law.[4]

After an adequate time for discovery, the party
without the burden of proof may, without presenting evidence, move for summary
judgment on the ground that there is no evidence to support an essential
element of the nonmovant=s claim or defense.[5]  The motion must specifically state the
elements for which there is no evidence.[6]  The trial court must grant the motion unless
the nonmovant produces summary judgment evidence that raises a genuine issue of
material fact.[7]  If the nonmovant brings forward more than a
scintilla of probative evidence that raises a genuine issue of material fact,
then a no evidence summary judgment is not proper.[8]

 

 








III.  Analysis

A.  Whether the summary judgment
is interlocutory

In Appellants= second
point, they contend that the summary judgment is interlocutory because it did
not dispose of the counterclaim they raised in their third amended answer.  Because this point goes to this court=s
jurisdiction, we consider it first.








A judgment is final if it Adisposes
of all the remaining parties and claims, based on the record in the case.@[9]  Thus, if Appellants had a pending
counterclaim not disposed of by the judgment, then the judgment was not
final.  Rule 63 of the Texas Rules of
Civil Procedure provides that amended pleadings offered within seven days of
the trial shall be filed only after the trial court gives the party leave to do
so.[10]  The trial court shall grant leave to file the
amended pleadings unless the opposing party demonstrates surprise or prejudice
or Athe
amendment asserts a new cause of action or defense, and thus is prejudicial on
its face, and the opposing party objects to the amendment.@[11]  We review a trial court=s denial
of leave to file amended pleadings for abuse of discretion.[12]  For purposes of rule 63, a summary judgment
proceeding is a trial.[13]

In the trial court, Appellants filed their
amended pleadings on September 21, 2006, the day of the summary judgment
hearing, which clearly was not within the time period provided by rule 63.  Tipton objected to the late filing, and the
court upheld the objection, stating, AThese
documents are not timely filed and the Court is not going to consider them
today.@








On appeal, Appellants do not argue or cite any
authority suggesting that their amendment did not cause surprise and would not
prejudice Tipton, that their pleadings did not introduce a new substantive
matter, or that the trial court abused its discretion by denying them leave to
file the amended pleadings asserting their counterclaim.  They argue only that they had filed a
pleading asserting a counterclaim and that the order granting summary judgment
does not dispose of that claim.  Because
the record is clear that the trial court denied Appellants leave to file their
third amended original petition and therefore any new counterclaims asserted in
it were not on file at the time the trial court granted summary judgment, the
summary judgment disposed of all the claims before the court at the time of the
judgment.  Consequently, the summary
judgment is final and not interlocutory.[14]  We overrule Appellants= second
point.

B.  Whether the trial court
erred by granting summary judgment

In Appellants= first
point, they argue that the trial court erred by granting summary judgment for
Appellee.  We first determine whether the
trial court erred by granting no-evidence summary judgment for Tipton.  

Tipton argued in his motion that Appellants had
no evidence on their affirmative defense of release and on their verified
denials that they executed the deeds and that the endorsements on the deeds
were genuine.  Appellants argue on appeal
that they offered summary judgment proof of each element of the Athree
affirmative defenses@ for which Tipton claimed that
they had no evidence.  As we discuss below,
the verified denials relied on by Appellants are not affirmative defenses
subject to a no-evidence summary judgment motion.  Because these matters are not affirmative
defenses, and because Appellants do not raise error with respect to the trial
court=s grant
of summary judgment on their other nineteen asserted affirmative defenses, we
consider only the affirmative defense of release.








In the trial court, Appellants attached evidence
to their response, but they did not explain to the trial court how any of the
evidence supported their affirmative defenses or raised a genuine issue of
material fact on any matter Tipton was required to prove.  They stated only that Athe
court should deny [Appellee=s]
motion for summary judgment because [Appellants=] Second
Amended Answer and Exhibits[,] attached here[ ]to[ ]this response, . . .
created a fact issue on each el[e]ment of the affirmative defenses.@

Most of Appellants=
evidence falls into two categories: 
evidence relating to an agreement between Tipton and Weldon, and evidence
relating to a conveyance by Terry Ellis to Appellants of the properties at
issue.  

Evidence in the first category includes 

$               
a loan agreement acknowledged on April 5, 2002, between Weldon as
president of JWK and Tipton, which stated that Tipton had advanced a total of
$300,000 to Weldon individually and to JWK, and that if the money advanced was
not repaid by April 20, 2002, Tipton would buy JWK for $3.5 million, including
real property owned by the company, the legal description of which places it in
the Joel Walker Survey, Alocally known as 1318
Clear Lake@ in Weatherford, Texas;

 

$               
a certificate of resolutions dated April 5, 2002, filed of record on
May 15, 2002, signed by Weldon as president of JWK  resolving that the Aattached agreement@ (presumably the loan
agreement that was recorded with the certificate) was adopted as a sales
contract; and

 








$               
a letter from Sheridan to Tipton, notifying him that he had defaulted
on the agreement of April 5, 2002, and that the agreement was therefore
terminated and the advances would be retained as liquidated damages.

 

Evidence in the second category includes the
following instruments, all executed by Terry Ellis as representative of the
estate of Vivian Swearingin and filed of record on October 23, 2002:

$               
a release of lien, dated June 20, 2002, stating that on September 25,
2001 [the day after the date of the Watson deed], the Watsons executed and
delivered to Ellis a promissory note concerning Lot Fifteen, Block Three,
Rolling Hills Addition, that the note had been paid in full to Ellis as
attorney in fact for Swearingin, and that therefore Ellis released and quitclaimed
all right, title, and interest in the property described;

 

$               
a warranty deed dated June 20, 2002, conveying from Ellis as attorney
in fact for Swearingin to the Watsons all of Swearingin=s interest in Lot Fifteen,
Block Three of the Rolling Hills Addition in Weatherford;

 

$               
a release of lien, dated June 20, 2002, stating that on September 25,
2001, in order to secure a promissory note executed by the Watsons and payable
to Ellis, Weldon had executed and delivered to Ellis a warranty deed to the
property at Lot One, Block Ten, Roselawn Addition, with a local address of 606
Hilltop Drive, and that the note had been paid in full to Ellis as attorney in
fact for Swearingin, and Ellis therefore released and quitclaimed all right,
title, and interest in the property described; and

 

$               
a warranty deed dated June 20, 2002, conveying
from Ellis as attorney in fact for Swearingin to Weldon her interest in Lot
One, Block Ten, Roselawn Addition, locally known as 606 Hilltop Drive in
Weatherford.








Appellants also contend that they provided evidence supporting their
claims in the form of affidavits attached to their second amended original
answer.  By Aaffidavits,@
Appellants refer to the fact that their answer was verified as required for
pleas under civil procedure rule 93.[15]









Appellants argue that their evidence was more
than a scintilla to support their affirmative defense of release.  Appellants did not point out to the trial
court evidence supporting their affirmative defense of release as to Tipton,
and they do not do so in their brief on appeal. 
As best we can determine, Appellants=
evidence of the defense of release was limited to a statement in their second
amended pleadings that Ellis, acting as the representative of Swearingin, who
they asserted was Tipton=s partner, executed a release
and conveyed the properties back to them after determining that no indebtedness
existed.  Generally, a party=s
pleadings, even if verified, are not competent summary judgment evidence.[16]  Furthermore, the pleadings here do not meet
the requirements of rule 166a because there is no indication that Appellants
have personal knowledge of the facts contained in them, and they do not assert
facts demonstrating that they have personal knowledge of the conclusions in
their pleadings.  For example, there is
no indication that Appellants have personal knowledge of the facts asserted
that Tipton or his attorney forged or fraudulently attached Appellants=
signatures to the deeds.  Nor is there
any indication that Appellants are competent to testify to those facts.  Thus, the pleadings are not competent summary
judgment evidence.[17]









Furthermore, Appellants fail to connect the rest
of the evidence to their affirmative defense. 
Tipton and Swearingin may have been partnersCthe
appellate record includes a check in the amount of $200,000 from Tipton and
Swearingin to the Watsons, drafted around the same time that the Watson and
Kennedy deeds were executed.  But neither
the Watsons nor the Kennedys have raised the argument here or in the trial
court that they executed and delivered the deeds but did so to secure a debt
rather than to convey title; they expressly deny ever executing the deeds.  Appellants did not point out to the trial
court or to this court any evidence that the deeds were not given to Tipton
individually, that the deeds were given to Tipton as security for a debt that
Ellis had authority to release, or that Ellis had the authority to convey the
properties to Appellants.  A deed does
not convey title when no title rests in the grantor,[18]
and thus, because Appellants did not produce evidence raising a fact issue as
to whether Ellis held title, the deeds from Ellis do not raise a fact issue as
to whether Ellis=s release of lien and warranty
deeds defeated Tipton=s right to recovery.  The fact that the deed from Ellis to Weldon
was recorded before the Kennedy deed does not affect our holding.  An unrecorded deed is binding on a party to
the deed,[19]
and thus, the Kennedy deed was binding on Weldon even while it was unrecorded.[20]


Because Appellants did not produce more than a
scintilla of evidence to support their affirmative defense of release, the
trial court did not err by granting no-evidence summary judgment for Tipton.








We also hold that Tipton established his right to
judgment on his traditional motion for summary judgment.  When a grantor transfers property, title to
the property vests in the grantee upon execution and delivery of the deed
conveying the property.[21]  Whether the grantor intended to deliver
the deed and convey the property in accordance with the deed is Adetermined
by examining all the facts and circumstances preceding, attending, and
following the execution of the instrument.@[22]  But proof that the deed was recorded creates
a presumption of and establishes a prima facie case of delivery and intent by
the grantor to convey the land.[23]  This presumption may be rebutted by showing A(1) that
the deed was delivered or recorded for a different purpose, (2) that fraud,
accident or mistake accompanied the delivery or recording, or (3) that the
grantor had no intention of divesting himself of title.@[24] 








Tipton produced copies of the deeds at issue and
proof that the deeds had been filed in the records of Parker County.  The notarized deeds named him as grantee and
Appellants as the grantors.  The Watson deed
described the property conveyed as Lot Fifteen, Block Three of the Rolling
Hills Addition in Weatherford, Texas, according to the map and plat of that
addition in the Parker County records. 
The deed from Weldon described the property conveyed as Lot One, Block
Ten, Roselawn Second Addition, Alocally
known as 606 Hilltop Drive,@ in
Weatherford, Texas.  By providing the
deeds and proving that the deeds were recorded, Tipton established a prima
facie case that the Watsons and Weldon delivered the deeds and intended to
convey the property described.  A showing
that the deeds were executed and delivered with an intent to convey the
property is sufficient to establish that the deeds vested title to the
properties in Tipton.[25]

On appeal, Appellants argue that the deeds are
not entitled to the presumption because the file stamp numbers suggest that the
documents were somehow altered and pages interchanged.  Specifically, they point out that the Watson
deed has a file stamp and page number that is quite a bit lower than the file
stamp and page number of the Kennedy deed, indicating that the Watson deed was
filed much earlier than the Kennedy deed, which they argue is contrary to what
one would expect if the deeds had been signed one day apart.  A showing that fraud accompanied the
recording of the deeds would rebut the presumption that Appellants intended to
convey the property to Tipton.[26]








The
evidence shows that the Watson deed was filed in October 2001 and that the
Kennedy deed was filed in January 2003; the Watson deed has a lower record
number because it was filed over a year before the filing of the Kennedy
deed.  We have no evidence before us explaining
why the Kennedy deed was not filed until 2003, but Appellants make no argument
as to how the delay in filing raises a fact issue on whether fraud accompanied
the delivery or recording.

Appellants
also argue that the record number for the Watson deed is lower than the record
number for an agreement between Weldon and Tipton Awhich is
known to have been executed on April 5, 2001@;
Appellants claim that this implies that the Watson deed was filed before April
5, 2001, which is at fatal variance with the date on the Watson deed of
September 24, 2001.  Whatever the date of
the execution of the agreement, the evidence shows that it was filed on May 15,
2002.  Because the Watson deed was filed
before that date, it is no surprise that the Watson deed has a lower record
number than the agreement.  This evidence
does not raise a fact issue as to the validity of the deeds or Appellants=
intention to convey the property.








Appellants
next argue that with respect to the Kennedy deed, Kennedy=s wife
was required to join in its execution under property code section 41.004, and
because she did not, the deed does not not support Tipton=s
declaratory judgment action.  Section
41.004 relates to abandonment of a homestead.[27]  The plea of homestead is an affirmative
defense.[28]  Accordingly, Appellants had to affirmatively
plead homestead and cannot raise it for the first time on appeal.[29]  Nowhere in the trial court did they plead
that the Kennedys= property was homestead property
and that therefore, because Weldon=s wife
did not join in the deed, the deed was inoperative against her homestead right.
Thus, they cannot raise it now as a ground for reversal.[30]








Next,
Appellants contend that Tipton presented no summary judgment evidence that he
paid consideration for the conveyances. 
Thus, they argue, Tipton did not carry his burden of proof.  Appellants do not cite any authority
supporting their argument that Tipton had to prove consideration to prevail.[31]  And we note that Tipton did not have to prove
consideration because mere lack of consideration would not have prevented the
deeds from conveying title.[32]  Furthermore, as we discuss below, the
acknowledgments on the deeds constitute prima facie evidence that the deeds
were executed for the consideration stated therein.  Finally, lack of consideration is an
affirmative defense on which Appellants, not Tipton, would have had the burden
of proof.[33]  Because Tipton was not required to prove
consideration to be entitled to summary judgment, we reject Appellants=
arguments on the matter.








Appellants
next assert that Tipton=s evidence suggests that the
property he alleged was conveyed to him by the Watsons was the JWK plant, which
the Watsons did not have authority to convey, and not the Watsons= home
address, or if it was the Watsons= home
address, that property was their homestead. 
The deed Tipton produced to show a conveyance from the Watsons to Tipton
described the property as Lot Fifteen, Block Three of the Rolling Hills
Addition in Weatherford, Texas, as described in the deed records of Parker
County.  Appellants= claim
seems to be based on the fact that in his petition, Tipton stated that this
property Ais known to [Appellee] to have a
municipal address of 1318 Clear Lake Road, Weatherford, Parker County, Texas.@  They argue that 1318 Clear Lake Road is the
address of the company plant.

 








The
Watsons did not argue to the trial court that the property described was their
homestead or make any argument as to why they could not convey their homestead,
and on appeal they make no argument and cite no authority suggesting that they
could not convey their homestead.[34]  And although Tipton may have stated in his
petition that the property described in the deed had a municipal address of
1318 Clear Lake Road, the deed described the property by lot and block, and in
his motion for summary judgment, he asked for a declaration that the deed
passed good title to the property described in the deed.  Appellants did not argue or point to any
evidence demonstrating that the property described by lot and block was the
same property as the 1318 Clear Lake Road property or that the Watsons could
not legally convey such property. 
Furthermore, the trial court=s
judgment described the property conveyed by the lot and block description, not
by a street address.  We therefore reject
Appellants= argument that Tipton=s
evidence did not support a finding that the Watson deed conveyed to him the
property described in the deed. 

 








Finally,
we consider the effect of the verified denials by the Watsons and by Weldon
with respect to their execution of the deeds and the genuineness of the
endorsements on them.  As stated above,
these verified denials are not affirmative defenses; they rebut the factual
propositions of Tipton=s pleadings, as opposed to
accepting Athe existence at one time or
another of a prima facie case@ and
establishing an independent reason why, even if he proves his claims, he should
not be allowed to recover.[35]  Under rule 93 of the rules of civil
procedure, if Appellants had not made the verified denials, then the deeds and
the endorsements on them would have been accepted into evidence as fully
proved.[36]  Because Appellants did make these verified
denials, Tipton was required to prove that Appellants executed the deeds and
that the endorsements on the deeds were genuine. 

 








Both
deeds were acknowledged and notarized by Lana Trimble, a notary public of the
State of Texas.  The acknowledgment on
the Watson deed states that Larry and Sheridan Watson personally appeared
before Trimble and acknowledged that they executed the deed for the purpose and
consideration expressed in it.[37]  The acknowledgment on the Kennedy deed states
that Weldon appeared before her and made an identical acknowledgment.  An acknowledgment on a deed is prima facie
evidence that the grantor executed the deed for the consideration expressed in
the deed.[38]  Tipton therefore made a prima facie case as
to the genuineness of Appellants=
signatures and as to Appellants=
execution of the deeds.[39]  To defeat Tipton=s right
to recover on these grounds, Appellants would have had to present clear
evidence sufficient to raise a fact issue on whether they executed the deeds or
endorsed them.[40]  They produced no such evidence.

Having
held that Tipton produced sufficient evidence to establish his right to
judgment and that Appellants failed to produce evidence raising a genuine issue
of material fact as to his right to judgment and failed to produce evidence on
their affirmative defense, we overrule their first point.

C.  Whether
the trial court erred by vacating a previously granted motion for new trial

 

In
Appellants= third point, they argue that
the trial court erred by Aungranting@ a
previously granted motion for new trial because it did so outside of its
plenary power.  













On
October 24, 2006, Appellants filed a motion for new trial.  By that time, they had obtained new
counsel.  On January 5, 2007, the trial
court entered an order stating that the motion was granted.  Tipton filed a motion to reconsider in which
he alleged that the new trial had been granted as to Weldon only and asking the
court to reconsider its ruling.  On
January 12, 2007, the trial court entered an order vacating its order on the
motion for new trial.  The order granting
the motion for new trial was signed on the 105th day after the court entered
final judgment.  This order was within
the trial court=s plenary power.[41]  But Appellants, relying on the Supreme Court
of Texas=s
opinion in Porter v. Vick,[42]
argue that a trial court loses power to set aside a previously granted motion
for new trial seventy-five days after final judgment, and thus, because the
motion for new trial in this case was granted after that time period, the trial
court could not have vacated the motion. 
After the parties filed their briefs in this case, the supreme court
overruled Porter v. Vick.[43]  In Baylor Medical Center, the supreme
court held that when a new trial is granted, Athe case
stands on the trial court=s docket >the same
as though no trial had been had.=@[44]  Thus, the trial court has the power to set
aside an order granting a motion for new trial Aany time
before a final judgment is entered.@[45]  Because the trial court had the power to set
aside the new trial order at any time before a new final judgment was entered,
the trial court did not err by Aungranting@ the
motion.  We overrule Appellants= third
point.

IV.  Conclusion

Having
overruled each of Appellants= points,
we affirm the trial court=s judgment.

 

 

LEE ANN DAUPHIINOT

JUSTICE

PANEL:  CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DELIVERED:  November 6, 2008











[1]See Tex. R. Civ. P. 94.





[2]See Tex. R. Civ. P. 166a(a), (c); MMP, Ltd. v. Jones,
710 S.W.2d 59, 60 (Tex. 1986).





[3]IHS Cedars Treatment Ctr.
of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).





[4]City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).





[5]Tex. R. Civ. P. 166a(i).





[6]Id.; Johnson v. Brewer
& Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002).





[7]See Tex. R. Civ. P. 166a(i) & cmt.; Sw. Elec.
Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).





[8]Moore v. K Mart Corp., 981 S.W.2d 266, 269
(Tex. App.CSan Antonio 1998, pet.
denied). 





[9]Lehmann v. Har‑Con
Corp.,
39 S.W.3d 191, 200 (Tex. 2001).





[10]Tex. R. Civ. P. 63.





[11]Greenhalgh v. Serv.
Lloyds Ins. Co., 787 S.W.2d 938, 939 (Tex. 1990); see also Tex. R. Civ. P. 63,
Hardin v. Hardin, 597 S.W.2d 347, 349B50 (Tex. 
1980).





[12]Hardin, 597 S.W.2d at 349B50.





[13]Goswami v. Metro. Sav.
& Loan Ass=n, 751 S.W.2d 487, 490
(Tex. 1988).





[14]See Lehmann, 39
S.W.3d at 200.





[15]See Tex. R. Civ. P. 93
(requiring certain pleas to be verified). 






[16]Laidlaw Waste Sys.
(Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 660 (Tex. 1995).  





[17]See id. at 660B61 (holding that verified
pleadings were not competent summary judgment evidence when pleadings did not
otherwise meet requirements of rule 166a). 





[18]Day & Co., Inc. v.
Texland Petroleum, Inc., 718 S.W.2d 384, 390 (Tex. App.CAmarillo 1986), aff=d, 786 S.W.2d 667 (Tex.
1990).  





[19]Tex. Prop. Code Ann. ' 13.001 (Vernon 2004).





[20]See id.





[21]Stephens County Museum,
Inc. v. Swenson, 517 S.W.2d 257, 261B62 (Tex. 1975). 





[22]Troxel v. Bishop, 201 S.W.3d 290, 297
(Tex. App.CDallas 2006, no pet.). 





[23]Swenson, 517 S.W.2d at 261B62; Troxel, 201
S.W.3d at 297. 





[24]Swenson, 517 S.W.2d at 262.





[25]Id. at 261B62.





[26]Id. at 262.





[27]Tex. Prop. Code Ann. ' 41.004 (Vernon 2000).





[28]Svacina v. Gardner, 905 S.W.2d 780, 782
(Tex. App.CTexarkana 1995, no writ);
Bennett v. State Nat=l Bank, Odessa, Tex., 623 S.W.2d 719, 722
(Tex. Civ. App.CHouston [1st Dist.] 1981,
writ ref=d n.r.e.).  





[29]Clear Creek Basin Auth., 589 S.W.2d at 678
(holding that nonmovant may raise sufficiency of the evidence for the first
time on appeal but that any other grounds for reversal must have been raised in
the trial court).  





[30]See id.





[31]See Tex. R. App. P. 38.1(i)
(requiring briefs to contain arguments supported by appropriate citations to
authority).





[32]Higgs v. Farmer, 234 S.W.2d 1021, 1022
(Tex. Civ. App.CFort Worth 1950, no writ)
(stating that a conveyance of land need not be supported by consideration to be
effective); see also Uriarte v. Petro, 606 S.W.2d 22, 24 (Tex. Civ. App.CHouston [1st Dist.] 1980,
writ ref=d n.r.e.) (noting that
ordinarily, want of consideration alone, without a showing of fraud or undue
influence in obtaining the deed, will not be ground for voiding a deed). 





[33]See 1464‑Eight,
Ltd. v. Joppich, 154 S.W.3d 101, 103 (Tex. 2004) (noting that lack of consideration
and failure of consideration are affirmative defenses).





[34]See Tex. R. App. P. 33.1(a),
38.1(i); Pheng Invs., Inc. v. Rodriquez, 196 S.W.3d 322, 332 (Tex. App.CFort Worth 2006, no pet.)
(holding that Appellants forfeited review of argument for which no authority or
argument was provided on appeal); Wilcox v. Hempstead, 992 S.W.2d 652,
656B57 (Tex. App.CFort Worth 1999, no pet.)
(holding that argument is waived if not raised in the trial court).





[35]See Heggy v. Am. Trading
Employee Ret. Account Plan, 123 S.W.3d 770, 778 (Tex. App.CHouston [14th Dist.] 2003, pet. denied) (noting
that A[a]n affirmative defense
does not rebut the factual proposition of the plaintiffs= pleading, but instead,
allows the defendant to introduce evidence to establish an independent reason
why the plaintiff should not prevail@ and that A[a]n affirmative defense generally accepts the
existence at one time or another of a prima facie case@); see also Tarrant
County Hosp. Dist. v. GE Auto. Servs., Inc., 156 S.W.3d 885, 895 (Tex. App.CFort Worth 2005, no pet.)
(noting that A[a]n affirmative defense
establishes an independent reason why the plaintiff should not recover on its
asserted cause of action@). 





[36]See Tex. R. Civ. P. 93.  





[37]See Tex. Civ. Prac. &
Rem. Code Ann. ' 121.006(b)(1) (Vernon
2005) (defining Aacknowledged@ as meaning Athat the person
personally appeared before the officer taking the acknowledgment and
acknowledged executing the instrument for the purposes and consideration
expressed in it@).





[38]See Bell v. Sharif‑Munir‑Davidson
Dev. Corp.,
738 S.W.2d 326, 330 (Tex. App.CDallas 1987, writ denied) (stating that A[t]he law is settled that
a certificate of acknowledgment is prima facie evidence that [the grantor]
appeared before the notary and executed the deed in question for the purposes
and consideration therein expressed@ and that A[c]lear and unmistakable proof that either the
grantor did not appear before the notary or that the notary practiced some
fraud or imposition upon the grantor is necessary to overcome the validity of a
certificate of acknowledgment@).





[39]See id.





[40]See id.





[41]See Philbrook v. Berry,
683 S.W.2d 378, 379 (Tex. 1985); Tex. R. Civ. P. 329b(a), (c), (e). 





[42]888 S.W.2d 789 (Tex.
1994).





[43]See In re Baylor Med.
Ctr. at Garland, No. 06-0491, 2008 WL 3991132, at *3 (Tex. Aug. 29, 2008) (orig.
proceeding) (internal citations omitted).





[44]Id. at *2 (internal citations
omitted).





[45]Id.